[Civ. No. 10820.  Second Appellate District, Division Two.—February 25, 1936.]

JUAN M. GONZALES, Appellant, v. H. M. ITO et al., Respondents.

Porter C. Blackburn for Appellant.

James A. Miller, Louis F. Labarere and John A. Cronin for Respondents.

CRAIL, P. J.—This is an appeal by the plaintiff from a judgment against him in an action for declaratory relief wherein he sought to have the court determine the legal effect of a transfer by two aliens not eligible to citizenship, named Ito, of certain property used for commercial purposes. The aliens acquired their title to the property through two channels: one, through execution of a judgment which they had obtained from the plaintiff; and another by complying with an interlocutory decree. Prior to May 9, 1927, defendant Ito was in possession of the property as a tenant of the plaintiff and he was conducting a general garage business thereon. On said date he was wrongfully dispossessed by the plaintiff and he thereafter obtained judgment for damages for such eviction in the sum of $9,000. The judgment was affirmed on appeal. The judgment, not having been paid, defendant Ito had the property sold under execution, and the sheriff sold at execution sale all of the plaintiff's right, title and interest in and to the property. The property already had a vendor's lien against it for $6,500 which was prior to the lien of Ito's judgment and, there being no bidder at the sheriff's sale, defendant Ito bid in the property. A sheriff's certificate of sale was issued to him.

Subsequent to the wrongful eviction of Ito, the plaintiff leased the property to a market corporation which later became involved financially and eventually its rights under the second lease were hypothecated to the Citizens National Bank. After defendant Ito had bought in at the sheriff's sale, the bank brought an action against all the parties herein to determine its rights under a foreclosure clause in the second lease, and there was an interlocutory judgment rendered in that action whereby defendant Ito was given the right to redeem the property by paying approximately $1550 to the bank, and it was further ordered and decreed therein that upon the payment of said sum Ito was to be restored to all the right, title and interest of the plaintiff in and to his original contract

of purchase. Within thirty days after the rendition of said interlocutory judgment and on September 6, 1933, the defendant Cronin paid the bank all moneys due it. This payment was made under an agreement with Ito whereby Cronin agreed to buy all of Ito's right and interest in the original contract of sale for $8,000, subject only to the balance due on the original purchase agreement.

Thereafter defendant Cronin went ahead with his part of the purchase of the property, and the fee title to the property which is still vested in the plaintiff's vendor would be vested in Cronin except for a stop order served upon the sheriff by the plaintiff which has resulted in the sheriff refusing to issue his deed to anyone who claims through the sheriff's certificate. The contentions of the plaintiff are: (a) Aliens not eligible to citizenship cannot own or hold real property in the state of California. (b) That no exception is made in behalf of those aliens who have acquired title through foreclosure of a lien on said property. (c) That a conspiracy to defeat the Alien Land Law arises when parties with knowledge of the disabilities, cause title to be taken in the name of such alien. (d) Such transaction, being void, it can be questioned collaterally by anyone." Stating the question more succinctly, it is—that the sale under foreclosure to Ito was void *ab initio* and therefore the defendants have no interest whatever in the property.

The plaintiff's first contention is answered by the Alien Land Law itself (Stats. 1921, p. lxxxiii), and by one of the treaties referred to therein. Section 2 of the Alien Land Act reads as follows: "All aliens other than those mentioned in section one of this act may acquire, possess, enjoy and transfer real property, or any interest therein, in this state, in the manner and to the extent and for the purpose prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise." The treaty upon which defendant Ito relies is found at 37 U. S. Stats. at Large, 1540, and the pertinent parts of article I thereof read as follows: "The citizens or subjects of the high contracting parties shall have liberty to enter, travel and reside in the territories of the other to carry on trade, wholesale and retail, to own or lease and occupy houses, manufactories, warehouses and shops, to employ agents of their choice, to lease land for

residential and commercial purposes, and generally to do anything incident to or necessary for trade upon the same terms as native citizens or subjects, submitting themselves to the laws and regulations there established. The citizens or subjects of each of the high contracting parties shall receive, in the territories of the other, the most constant protection and security for their persons and property."

The Alien Land Act has been in effect now for almost sixteen years, and a number of cases have been decided in which the act was construed both by the Supreme Court of California and by the Supreme Court of the United States. ■ One of the clearest principles enunciated in these cases is that any rights guaranteed to the subjects of the high contracting parties in treaties between the United States and other nations cannot be abrogated by the Alien Land Act. ■ In *Asakura* v. *Seattle*, 265 U. S. 332 [44 Sup. Ct. 515, 68 L. Ed. 1041], it was held that the language of the treaty was broad enough to comprehend all classes of business which might be reasonably embraced in the word "trade". Defendant Ito was engaged in trade (*State* v. *Tagami*, 195 Cal. 522 [234 Pac. 102]) and the leasing of the property in question from plaintiff was a reasonable and authorized incident thereof. ■ The treaty gave to defendant Ito the right to lease land for commercial purposes, and it gave to him the right to protect his lease in a court of competent jurisdiction including the right to execution upon a judgment for damages for breach of the lease. The Supreme Court of the United States in the case of *Jordan* v. *K. Tashiro*, 278 U. S. 123, at 130 [49 Sup. Ct. 47, 73 L. Ed. 214], said "The principle of liberal construction of treaties would be nullified if a grant of enumerated privileges were held not to include the use of the usual methods and instrumentalities of their existence." To hold otherwise would not only be unreasonable but would be against good morals.

■ The plaintiff, however, relies upon a part of section 7 of the Alien Land Act, which reads as follows: "No alien, company, association or corporation mentioned in section two or section three hereof shall hold for a longer period than two years the possession of any agricultural land acquired in the enforcement of or in satisfaction of a mortgage or other lien hereafter made or acquired in good faith to secure a debt." And the plaintiff contends in this connection that "the initia-

tive act, therefore, following out the wording and the manner of construction adopted through the *implied* prohibition in section 7, denies the use and enjoyment of any property acquired by an ineligible alien by foreclosure unless it was agricultural land''. The prohibition in section 7 is not an implied prohibition; it is an express one. 'It is not reasonable to contend, because the act prohibits the holding possession of agricultural land which is acquired under foreclosure for a longer period than two years, that by implication said section prohibits altogether the holding possession of commercial land acquired under foreclosure. The Alien Land Act eliminated the ownership, leasing or cropping of agricultural lands by ineligible aliens. Such lands were not included in the treaty. But the act did not attempt to prohibit such aliens from leasing, occupying or using real property in accordance with their rights under the treaty. However, a situation might develop under the Alien Land Act where an ineligible alien might legally obtain a lien or judgment on agricultural land and not be able to foreclose said lien or otherwise compel payment because of the possibility of having to bid in the property to satisfy the debt, which would be contrary to the treaty unless it was conceded that agricultural property like commercial property might legally be purchased at a foreclosure sale—hence section 7, prohibiting ineligible aliens from holding possession of agricultural property obtained under foreclosure for a period of more than two years. But it cannot be reasonably contended that such provision contains an implied prohibition against holding possession of commercial property, when under the express terms of the treaty commercial lands may be leased and occupied by such aliens. Especially is this apparent when it is recalled that such right ''shall receive in the territories of the other the most constant protection and security''.

The purchase by Ito under foreclosure was not void *ab initio* but valid. It follows also from what we have said that there was no conspiracy to defeat the terms of the Alien Land Act.

Judgment affirmed.

Wood, J., and McComb, J., *pro tem.*, concurred.

. A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 21. 1936.